FRANK, Acting Chief Judge.
The state appeals from the trial court’s order granting M.J.’s motion to suppress. The motion was grounded upon a contention that M.J.’s consent to a search was neither voluntary nor based upon probable cause. We reverse.
In unrefuted testimony, Officer Spearden D. Lefkimiotis of the St. Petersburg Police Department described th'e events that occurred at 1:00 a.m. on January 18,1995, at an apartment building known for drug trade. Because the building was clearly posted with “No Trespassing” and “No Loitering” signs, the officer’s attention was drawn to a group of three men and one woman standing by the stairwell. As Lefkimiotis, who was in uniform and who was driving a marked patrol car, pulled up to the group, M.J. started to walk away. Lefkimiotis then asked M.J. if he would mind speaking with him, so M.J. turned around and walked back toward the officer. When questioned whether he lived at the apartment building, M.J. responded that he was just “hanging out, you know, chilling.” Because of the well-known reputation of the area for drug sales, the officer asked M.J. if he “had anything illegal on him,” to which M.J. immediately replied, “No, sir, you can go ahead and check me if you want to.”
Lefkimiotis advised M.J. that he would be charged if anything illicit were found, and M.J. indicated that he understood. Lefki-miotis then patted M.J.’s pockets, discovering an object that felt like a crack pipe. The officer then walked with M.J. over to the cruiser and again warned him that he would be charged if he found contraband. After M.J.’s second acknowledgment that he understood the consequences of the search, the officer reached into M.J.’s pocket and pulled out a small glass pipe used for smoking crack cocaine. Following Miranda warnings, M.J. agreed to talk to the officer and stated that his mother had died of a heart attack about a year previously, and he began smoking crack from depression over his mother’s death.
The initial encounter between the defendant and the officer was wholly consensual. The officer used no words or force that would have conveyed to a reasonable person the impression that he was not free to leave. No testimony suggests that the officer’s utterances were “coercive, oppressive or dominating.” State v. Jenkins, 616 So.2d 173, 174 (Fla. 2d DCA 1993). An officer can engage a citizen in conversation without a founded suspicion of criminal activity. See State v. Carley, 633 So.2d 583 (Fla. 2d DCA 1994). An encounter remains consensual unless the police prevent a citizen from exercising the right to walk away, whether by using intimidating language, displaying a weapon, touch *1352 ing the person, or approaching in a group of officers. See State v. Wilson, 566 So.2d 585 (Fla. 2d DCA 1990).
In the peculiar circumstances of this case, it is clear that the defendant’s spontaneous and voluntary offer to allow the officer to “check” him extended from the initial encounter and patdown to the officer’s later act of reaching into M.J.’s pocket and withdrawing the crack pipe. This is so even though the officer, after feeling the crack pipe, but before he actually retrieved it from M.J.’s pocket, walked with M.J. over to a cruiser parked an unspecified distance away. Even if we were to find that Officer Lefki-miotis had actually detained M.J. by escorting him to the cruiser, that detention was not illegal. The consensual patdown had given the officer probable cause to arrest and search the defendant pursuant to the “plain feel” doctrine. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
Accordingly, the suppression order is reversed and this case is remanded for further proceedings.
ALTENBERND and QUINCE, JJ., concur.